## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 09 2019, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ethan G. Bartanen
Bartanen Law Office, LLC
Salem, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kyla Kinslow,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

September 9, 2019

Court of Appeals Case No.
19A-CR-738

Appeal from the Washington
Superior Court

The Honorable Frank Newkirk,
Jr., Judge

Trial Court Cause No.
88D01-1712-F2-883

**Brown, Judge.**

[1] Kyla Kinslow appeals her sentence for dealing in methamphetamine as a level 2 felony. She raises three issues which we consolidate and restate as whether her sentence is inappropriate in light of the nature of the offense and her character. We affirm.

*Facts and Procedural History*

[2] In December 2017, a warrant was issued for Kinslow's arrest under cause number 88D01-1712-F3-871 ("Cause No. 871") for: Count I, dealing in methamphetamine/delivery of methamphetamine as a level 3 felony; Count II, dealing in methamphetamine as a level 3 felony; Count III, possession of methamphetamine as a level 5 felony; Count IV, neglect of a dependent as a level 5 felony; Count V, possession of methamphetamine as a level 5 felony; Count VI, maintaining a common nuisance as a level 6 felony; and Count VII, maintaining a common nuisance as a level 6 felony.

[3] When the warrant was executed on December 18, 2017, Kinslow was in her home with numerous plastic baggies containing at least ten grams of methamphetamine. The State charged Kinslow under cause number 88D01-1712-F2-883 ("Cause No. 883") with Count I, dealing in methamphetamine as a level 2 felony; Count II, maintaining a common nuisance as a level 6 felony; Count III, possession of marijuana as a class B misdemeanor; and Count IV, possession of paraphernalia as a class C misdemeanor.

[4] On December 18, 2018, Kinslow filed a plea agreement in which she agreed to plead guilty to dealing in methamphetamine as a level 2 felony in Cause No.

883 and the State agreed to dismiss all other counts under that cause number as well as the counts under Cause No. 871.

[5] On December 19, 2019, the court held a hearing, and Kinslow pled guilty. On March 5, 2019, the court held a sentencing hearing. The State presented the testimony of Eric Mills, an employee of the Salem City Police Department assigned to the Drug Task Force, who stated that he was familiar with Kinslow and obtained an arrest warrant and a search warrant based on two controlled buys. He indicated that one of the conversations recorded during a controlled buy mentioned that Kinslow was headed to swim practice, and he learned through his investigation that she was a coach for a local swim club and had been offered a position to teach a middle school swim team. He testified that there were multiple adults and three children, including Kinslow's own child, present when the search warrant was executed, and that methamphetamine residue on a mirror or piece of glass was present in the general area of the home and would have been accessible to multiple people in the home. He testified that some drug paraphernalia was found in a child's room and a glass smoking pipe was found in the living room. He also indicated that Kinslow stated that she sold to about twenty-five people in the community. The court admitted recordings of the controlled buys, conversations regarding drug dealing which occurred on Facebook, and letters Kinslow wrote to another person while they were both incarcerated.

[6] Kinslow presented the testimony of her mother who stated that she believed her daughter was an addict and that long-term separation would have a negative

effect on Kinslow's child. Garo Kashian testified that he worked with jail programs, that he met Kinslow on February 13, 2018, that she participated and successfully completed three programs with him including a certified substance abuse education program, and that it was possible that she would turn her life around. Reverend Anastassia Zinke testified that he believed Kinslow's daughter would be significantly harmed by a long incarceration period. Valerie Richardson testified that Kinslow worked as one of her accountants for years and that she thought Kinslow needed rehab.

[7] Kinslow testified that she was high most of the time between August and December 2017 "with the exception of a few hours here and there." Transcript Volume II at 86. When asked if she did what she could to protect her daughter, she answered: "Yes and no. Yes, because despite everything else I love my daughter. Um, and even if I wasn't selling drugs in front of her or directly in her presence, I still placed her in a position that was unsafe for her." *Id.* She testified that she was previously addicted to cocaine, overcame that addiction, was clean for seven years before using methamphetamine, and believed she could overcome that addiction. She stated "I'm ashamed of the depth to which . . . I had fallen" and "I've placed this undue burden on my community, on my family, on the people that knew me and respected me." *Id.* at 98. She also stated: "I know that I am fully accountable and I know that there are consequences for my actions. I just want to say that I'm sorry. Deeply sorry." *Id.*

[8]     The probation officer who completed the presentence investigation report ("PSI") recommended a sentence of twenty years with two years suspended to supervised probation. The PSI also states:

> This officer spoke with Shawn Hurst of the Hoosier Hills PACT Office Community Corrections. Shawn stated that she felt it would be beneficial for the defendant to receive Purposeful Incarceration while at the Indiana Department of Correction. She also stated that if the defendant doesn't receive Purposeful Incarceration, she would recommend that any suspended time would be done with Day Reporting as a term of the defendant's probation.

Appellant's Appendix Volume II at 31. The prosecutor recommended a sentence of twenty-five years with five years suspended. Kinslow's counsel stated: "I don't care how long the sentence is. I care how it is spent." Transcript Volume II at 103. He also stated: "We would ask the Court to suspend a portion of the time sentenced, Your Honor, and allow my client to participate in the available rehabilitation within the prisons or without the prison so that we can get back to what we can do." *Id.*

[9]     The court stated:

> [T]he aggravating circumstances include that you do have a history of criminal activity. Mitigating that you did admit your crime and you've entered into an open plea accepting the judgment of the Court. But one of the things that the State brought up had to do with character and whether to, how your character might figure into this. And actually as I thought more and more about it and considered the exhibits, I want to tell you some things that I saw about character. One is you did have

your children around during drug sales. You had drugs and paraphernalia where the children had access to it. And I realize you have one child, but there are other children in the house. That in your text messages you talked about giving Xanax to the children before bedtime. And of course, whether you did or you didn't, it is clear from your text messages that you were out making drug deliveries while your child was home in bed. Which is, you know, just one piece of the puzzle here in trying to figure out what your character is. You were breaking the jail rules by passing notes and letters and in the letter or in your explanation yesterday that it was because you were expecting that he was going to be out. It's clear from the context of the letter that you knew he wasn't out. You were talking about how you were working, you were sorry you weren't able to get him out yet. You recruited other people to sell drugs for you. You were supplying a large number of people with drugs. You said, in one of your letters, and I think this is very telling. I mean you were running this as a business. It wasn't, as the prosecutor pointed out, it wasn't like somebody who was using drugs and selling a little bit once in a while to get by, you had an ongoing business. Which was organized with ledgers and associates and underlings that were doing your bidding. And you said in one of your letters that you wanted this other person out of jail so that he could get rid of your snitches. That's ruthless, that's criminal activity. That's exactly what the drug dealing statutes are meant to deal with. You're getting the advisory sentence of seventeen and a half years. None of it is suspended. . . . The other charges, the other counts are being dismissed as a part of the agreement. And I'm not recommending purposeful incarceration. You may have a drug issue but this is mainly criminal activity and not addiction.

*Id.* at 107-108. In its order, the court also mentioned a reduced sentence would depreciate the seriousness of the charges. The court sentenced Kinslow to seventeen and one-half years.

*Discussion*

[10]    The issue is whether Kinslow's sentence is inappropriate in light of the nature of the offense and her character. Kinslow argues that her willingness to plead guilty should serve as a positive when examining her character. She asserts that she was a productive member of society as someone who worked in a tax business and as a youth swim coach prior to her relapse. She also argues that some suspended time or purposeful incarceration should have been considered to allow for rehabilitation and treatment under the monitoring of the probation department. The State argues that the advisory sentence, which was less than that recommended by the probation officer in the PSI, was not inappropriate.

[11]    Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[12]    Ind. Code § 35-50-2-4.5 provides that a person who commits a level 2 felony shall be imprisoned for a fixed term of between ten and thirty years with the advisory sentence being seventeen and one-half years.

[13]    Our review of the nature of the offense reveals that Kinslow committed dealing in methamphetamine in the same house in which children were present including her own daughter. Our review of the character of the offender reveals

that Kinslow pled guilty to dealing in methamphetamine as a level 2 felony and the State agreed to dismiss counts of maintaining a common nuisance as a level 6 felony, possession of marijuana as a class B misdemeanor, and possession of paraphernalia as a class C misdemeanor under Cause No. 883 as well as counts under Cause No. 871. As an adult, Kinslow was charged with theft as a class D felony and forgery as a class C felony in 2007, and she pled guilty in 2008 to theft as a class D felony. In 2009, she was charged with forgery as a class C felony and theft as a class D felony, but the charges were dismissed in 2010 by agreement. The PSI indicates that Kinslow previously had part of a suspended sentence revoked based upon new charges and had to serve a portion of her suspended sentence incarcerated in Kentucky. She joined the United States Navy in 2006 and reported that she completed basic training but received an "other than honorable discharge" after she started using again. Appellant's Appendix Volume II at 29.

[14] She reported that she began smoking marijuana when she was about eighteen years old, smoked it on a regular basis until 2002, tried cocaine for the first time in 2004 which escalated into a habit, was sober from 2009 to 2016, and tried methamphetamine in December 2016 and "it quickly went out of control." *Id.* The PSI indicates that her overall risk assessment score places her in the moderate risk to reoffend category.

[15] After due consideration, we conclude that Kinslow has not sustained her burden of establishing that the advisory sentence is inappropriate in light of the

nature of the offense and her character.[1]  To the extent Kinslow asserts that the trial court erred in not recommending her for the purposeful incarceration program, we note that the trial court stated that it was not recommending her for purposeful incarceration and stated: "You may have a drug issue but this is mainly criminal activity and not addiction."  Transcript Volume II at 108.  In light of the evidence including Mills's testimony in which he indicated that Kinslow stated that she sold to twenty-five people in the community, we cannot say that reversal is warranted on this basis.

[16]  For the foregoing reasons, we affirm Kinslow's sentence.

[17]  Affirmed.

Altice, J., and Tavitas, J., concur.

---

[1] To the extent Kinslow argues that the court abused its discretion by failing to consider her remorse, the undue hardship on her child imprisonment would cause, and her drug addiction as mitigators, we need not address this issue because we find that her sentence is not inappropriate under Ind. Appellate Rule 7(B).  *See Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007) (holding that, in the absence of a proper sentencing order, Indiana appellate courts may either remand for resentencing or exercise their authority to review the sentence pursuant to Ind. Appellate Rule 7(B)), *reh'g denied*; *Shelby v. State*, 986 N.E.2d 345, 370 (Ind. Ct. App. 2013) (holding that "even if the trial court did abuse its discretion by failing to consider the alleged mitigating factor of residual doubt, this does not require remand for resentencing"), *trans. denied*.  Even if we were to consider Kinslow's abuse of discretion argument, we would not find it to be persuasive in light of the trial court's comments and the record.